# AFFIDAVIT

I, Erik Enderlin, a Task Force Officer with the Drug Enforcement Administration (DEA), being duly sworn, hereby state as follows:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

2. I have been employed by the Kansas City, Missouri Police Department (KCMOPD) since September 2005 and commissioned as a police officer since March 2006. I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been in this position since April 2024. Since June 2024, I have been assigned as a detective to the Missouri Western Interdiction and Narcotics Task Force (MOWIN) and Kansas City Interdiction Task Force (KCITF). In that capacity and all associated training beforehand, I have assisted in the investigations of multiple cases involving illegal drugs and controlled substances. I have received training from experienced DEA special agents, other narcotics officers, and specialized courses in conducting illicit drug investigations, including but not limited to drug interdiction, identification, distribution of drugs, undercover operations, use of confidential sources, and the legal aspects of conducting drug investigations.

3. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. § 841(a)(l), possession with intent to distribute methamphetamine, has been committed by JOSUE SABILLON, and I submit this affidavit in support of a criminal complaint.

4. This affidavit is based on the following facts, which are known to me as a result of my personal participation in the investigation, my conversations with law enforcement officers involved in the investigation, and from reports prepared by law enforcement officers. This affidavit does not contain all the information that I know about the investigation, but rather it contains a summary of certain components of the investigation to establish probable cause for the listed offenses.

5. On September 5, 2025, members of the Missouri Western Interdiction and Narcotics Task Force (MOWIN) and DEA Kansas City Interdiction Task Force (KCITF) were conducting interdiction activities at the AMTRAK Train Station located at 30 W. Pershing Rd. Kansas City, MO. This location is within the Western District of Missouri.

6. At approximately 9:10 a.m. the AMTRAK train which originates in Los Angeles, California and travels to Chicago, Illinois arrived at the Kansas City, Missouri station. Investigators know through their training and experience that Los Angeles is a "source city" for illegal controlled substances. Law Enforcement have made numerous controlled substance arrests and seizures from this train route.

7. Prior to investigators arriving at the train, members of the MOWIN Task Force and KCITF received information of a passenger Josue SABILLON traveling on the train. SABILLON had purchased a last-minute ticket from Las Vegas, Nevada to Chicago, Illinois. Investigators know that it is common for individuals transporting narcotics to purchase last minute tickets to help conceal their movements. A police database check revealed SABILLON was arrested in April of 2025 for narcotics possession.

8. Investigators contacted SABILLON in sleeper car #13 and identified themselves as law enforcement officers. Investigators asked SABILLON if they could speak with him, and

SABILLON said: "let me get dressed". After several minutes SABILLON opened the door to his sleeper car. The detective introduced himself again by showing SABILLON his identification card and badge. The detective explained that he contacts passengers of the train who could be trafficking large amounts of illegal narcotics, firearms, and/or large sums of United States Currency and asked if SABILLON had any of those items. SABILLON said that he did not have any of those items. The detective asked SABILLON if he could see his train ticket and identification. SABILLON attempted to locate his train ticket on his cellular telephone with negative results. The detective again asked SABILLON for identification, and SABILLON produced a Honduran Passport bearing the name Josue Camilo Sabillon Rivera. The detective reviewed the passport and handed it back to SABILLON.

9. Investigators then asked SABILLON if they could search SABILLON's sleeper car for illegal narcotics, firearms, and/or large sums of USC. SABILLON consented to the search of his sleeper car. As SABILLON stepped out of the sleeper car to allow investigators into the sleeper car, investigators noticed SABILLON was in possession of a black duffel bag. The detective asked SABILLON if he could search the black duffel bag. SABILLON said it was a personal bag and that he would need a search warrant.

10. SABILLON walked toward the exit of the train. As SABILLON walked past the luggage area, he placed the black duffel bag with other luggage and continued to walk toward the exit. Investigators searched SABILLON's sleeper car with negative results other than a blue iPhone that appeared to be hidden under a pillow on the bed.

11. A drug certified canine and handler responded to the train and conducted an open-air sniff of the luggage area, including SABILLON's black duffel bag. When the canine came into

contact with SABILLON's black duffel bag, it alerted to the odor of narcotics in or about SABILLON's black duffel bag.

12. Investigators again asked SABILLON for consent to search the black duffel bag, and he denied consent. When investigators explained to SABILLON that the drug canine had alerted to his black duffel bag, SABILLON asked to speak with them in private. After moving back to SABILLON's sleeper car for privacy, he told investigators that he was surrounded by a large group of guys in Las Vegas who wanted him to take the black duffel bag to Chicago. Investigators again asked SABILLON if he would consent to a search of the black duffel bag and again SABILLON denied consent.

13. Due to the totality of the circumstances, investigators placed SABILLON on an investigative hold and transported to Kansas City, Missouri Police Department (KCPD) Metro Patrol Detention Facility. Investigators took possession of the black duffel bag and transported it to the KCPD Drug Enforcement Unit (DEU) for safekeeping and obtained a Jackson County search warrant. Investigators executed the search warrant and searched the black duffel bag belonging to SABILLON. Inside the duffle bag, investigators discovered and seized four clear 'Ziploc" style gallon plastic bags containing a crystal-like substance. The four plastic bags containing the crystal-like substance weighed approximately 3,567.79 grams and field tested positive for methamphetamine.

14. Also in the duffle bag were multiple vials of testosterone, unused syringes, and multiple pills in an unmarked pill container. Investigators observed two fake Texas identification cards bearing the name Joshua Ryan Crist. These identification cards had SABILLON pictured on them. There was also a PNC Virtual Wallet Visa card in the black duffel bag bearing the name Josue C. SABILLON.

15. At approximately 2:35 p.m., investigators received a call from Metro Patrol Detention Facility regarding SABILLON. SABILLON was asking for his medication that was located inside the black duffel bag.

16. In my training and experience and based on the totality of the circumstances, the amount of methamphetamine seized here (approximately 3.5 kilograms) is consistent with possession with intent to distribute.

Erik Enderlin
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to ~~before me~~ this ___8th___ day of September, 2025.

By telephone at 10:41 am, signature confirmed

HONORABLE W. BRIAN GADDY
United States Magistrate Judge
Western District of Missouri